# EXHIBIT 2

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

Brande Mazzeo, on behalf of herself and others
Similarly situated,

    Plaintiff,

v

Tenet Healthcare Corporation a foreign for
Profit Corporation and Detroit Medical Center,
Jointly And Severally

    Defendants.
_____/

Case No.21-011078-CD

Hon. Muriel D. Hughes

LEONARD MUNGO (P-43562)
L. BRANDYN MUNGO (P-82758)
Mungo & Mungo at Law, PLLC
Attorney for Plaintiff
31700 Telegraph Road, Suite. 250
Bingham Farms, MI 48025
(248) 792-7557 (off) / (248) 792-7303 (fax)
Caseaction@mungoatlaw.com
_____/

## FIRST AMENDED COMPLAINT AND JURY DEMAND

THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION BETWEEN THE PARTIES ARISING OUT OF THE TRANSACTION OR OCCURRENCE ALLEGED IN THIS COMPLAINT

**NOW COMES** Plaintiff Brande Mazzeo, individually and on behalf of those similarly situated, by and through her attorneys, Mungo & Mungo at Law, PLLC, by Leonard Mungo, and for her Complaint states as follows:

1

## Parties, Jurisdiction, and Venue

1. This action is brought pursuant to the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101 et. seq., Michigan Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.* and other statutory and common laws of the State of Michigan.

2. Plaintiff, Brande Mazzeo, at all times material hereto, worked for Defendants the Detroit Medical Center (DMC) and Tenet Healthcare at Children's Hospital of Michigan located within the City of Detroit, County of Wayne. Plaintiff, was at all times material hereto, within the meaning of Elliott Larsen Civil Rights Act, (ELCRA), MCL 37.2201 et. seq. (PDCRA), MCL 37.1201 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.* an employee of Defendants.

3. Defendant Detroit Medical Center (DMC), at all times material hereto, a subsidiary of foreign for profit Tenet Healthcare Corporation, conducting business in Wayne County Michigan, was and is, within the meaning of The Elliott Larsen Civil Rights Act, (ELCRA), MCL 37.2201 et. seq. (PDCRA), MCL 37.1201 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.* Plaintiff's employer. At all times material hereto, Defendant, DMC was a recipient of federal funds via including but not limited to the CARES Act grants and loans, Medicare Advance Payments and payroll match deferrals.

4. Defendant Tenet Healthcare Corporation is a foreign for Profit Corporation, with Corporate Offices in Dallas Texas, doing business in Wayne County Michigan and at all times material hereto was and is, within the meaning of The Elliott Larsen Civil Rights Act (ELCRA), MCL 37.2201 et. seq. (PDCRA), MCL 37.1201 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.* At all times material hereto, Defendant, Tenet was a recipient of

federal funds via including but not limited to the CARES Act grants and loans, Medicare Advance Payments and payroll match deferrals. Plaintiff's employer. Defendant Tenet during a portion of the time material hereto was operating under a Federal Consent Decree for violation of certain Federal Laws. Upon information and belief Tenet, during a portion of the time material hereto violated said Consent Decree numerous times. Upon information and belief Tenet also violated its agreement with the City of Detroit regarding its obligation to serve/meet the dominate medical needs of the citizens within the City of Detroit. Upon information and belief Tenet has discriminated against its executives who are/were natives of the city of Detroit based on impermissible classifications and for reasons that said executives opposed and or reported Tenet's violations of its obligations to the City of Detroit.

5. The events giving rise to this cause of action occurred in Wayne County, Michigan.
6. The amount in controversy exceeds $25,000.00, exclusive of interest, costs and attorney fees.

## Statement of Facts

7. Plaintiff was hired by Defendants on May 8, 1989, as a Student Nurse Technician and worked for Defendant Children's Hospital for thirty-two (32) years until she was unlawfully terminated on June 15, 2021, from her position as a Manager of Patient Care Services.
8. Plaintiff is highly a educated health care professional holding a Bachelors of Science Degree in Nursing (currently working on her Masters of Science Degree in Nursing focusing on Hospital Administration and Leadership). Plaintiff is also a Board Certified Nurse Executive through ANCC and member of the American College of Hospital Executives.
9. Since her employment with Defendants Plaintiff has always achieved a rating of acceptable to excellent on her job performance evaluations. The only exception occurred just prior to the unlawful termination of Plaintiff's employment with Defendants.
10. On February 18, 2018, Plaintiff was diagnosed with late-stage ovarian cancer. Plaintiff took a medical leave of absence due to need for medical treatment and to convalescence.
11. In September of 2018, Plaintiff was cleared by her physician to return to work.

12. Plaintiff's cancer diagnosis was unrelated to her ability to perform her work as a Manager of Patient Care Services

13. On or about October 2018 Plaintiff required and was afforded reasonable accommodations subsequent to her return from medical Leave, (i.e., working a later shift), to address her nausea and extreme fatigue and other side affects resulting from Plaintiff's ongoing chemotherapy treatment.

14. Plaintiff was advised by several managers and/or human resource officials that an "official" accommodation approval was not required, as the requested accommodations were deemed reasonable and necessary.

15. Plaintiff faced retaliation and discrimination as a result of requesting and being afforded said accommodations. Namely:
    a. Upon Plaintiff's return from medical leave, Basirico was made a co-manager with Plaintiff. Basirico had previously reported to Plaintiff.
    b. Plaintiff's work relationship with Basirico was fraught with stress and challenges after Basirico encouraged Plaintiff not to return to work timely from her Leave, undermined and contradicted Plaintiff's directions to their subordinates about health and safety protocols, and frustrating subordinate staff by moving their assigned charge shifts with little to no notice. Defendants knew and or should have known of Basirico's ongoing pattern of harassment of Plaintiff yet refused to stop same from occurring.
    c. Plaintiff was forced to endure Basirico's constant and unlawful discriminatory comments about the weight of various employees and racially discriminatory and stereotypical/microaggressions about and toward African American employees by Basirico.
    d. Plaintiff opposed said unlawful acts of employment discrimination against said employees by Basirico. Said unlawful discriminatory conduct engaged in by Basirico was brought to the attention of Defendants yet no action was taken by Defendants to address and or correct Basirico's unlawful discriminatory conduct toward Plaintiff and or the other above referenced employees.
    e. In October of 2020, Plaintiff was unilaterally moved to a special projects (Special Projects) role, wherein Basirico assumed all of Plaintiff's responsibilities and direct reports.

f. In this Special Projects role, Plaintiff complained that she was instructed to make determinations regarding infants in the Neonatal Intensive Care Unit (NICU) that in her professional opinion[1] should have been provided by physicians and not nurses.

g. Plaintiff also complained to Defendants the infants housed in the Neonatal Intensive Care Unit supervised by Plaintiff was grossly understaffed and consequently placed the infants housed there in imminent danger of serious health risks and or death. Plaintiff pleaded with Defendants to cease/stop admitting additional infants at Children's Hospital of Michigan until such time adequate number of staff was hired enabling Defendants to safely house and care the infants. Defendants refused to adopt and follow said advice and continued to expose infants to this reckless and dangerous practice and environment. Plaintiff became aware that Defendants' staff on one occasion discussed which infant should receive the most attention from staff based on which infant is likely to survive through the current staff shortages.

h. On or about June 6, 2021 Defendants arbitrarily revoked/discontinued Plaintiffs' accommodations wherein Plaintiff was previously allowed to work a later shift. Defendants' revocation of same was arbitrary, unwarranted, unlawful, retaliatory and with reckless disregard for Plaintiff's sensibilities and rights secured under the Michigan PDCRA.

i. Defendants' pattern and practice of discriminatory animus and retaliation toward Plaintiff culminated in Defendants subjecting Plaintiff to an unwarranted Performance Management Record of Conference on June 10, 2021. Defendants, however, just five (5) days later, without affording Plaintiff, in accordance with Defendants' own policy practice and guidelines, a reasonable time to address the unwarranted outcome or expectations of the Performance Management Record of Conference, Plaintiff was unlawfully terminated by Defendants on June 15, 2021.

j. At all times material hereto, Defendant, DMC was a recipient of federal funds via including but not limited to the CARES Act grants and loans, Medicare Advance Payments and payroll match deferrals.

---

[1] Defendant Children's Hospital's webpage describes the NICU program as, "[t]he program is the only one of its kind in Metro Detroit and one of a select few in the nation, providing a specially trained team of clinicians, dedicated to providing a developmentally appropriate environment to optimize neurologic care and developmental outcomes for this highly vulnerable population." https://www.childrensdmc.org/services/neonatal-and-perinatal-medicine/neonatal-neurocritical-care

16. On or about February 2021 Defendants unilaterally, in violation of Plaintiff's employment contract and Defendants own policies, practices and guidelines, arbitrarily lowered Plaintiff's annual employment performance rating given to Plaintiff by her supervisor. Defendants unlawfully lowered Plaintiff's performance rating score from a 3.02 rating to 2.9 for a loss of .12 points off her overall rating and loss of merit pay increase.

17. Plaintiff was likewise instructed to lower the performance rating of her employee from the score he was entitled to by virtue of his on the job performance during the beginning of the onset of the Covid-19 virus period. Plaintiff along with a number of other supervisors refused to arbitrarily lower the employee rating scores given to their employees as they earned said scores and were entitled to the merit increase in their pay as a result thereof.

18. Defendants sent out a stream of e-mails to Plaintiff and other supervisors intimidating and threatening the supervisors that refused to unlawfully lower their employees' performance rating scores. Employees subjected to the unlawful lowering of their performance rating scores circulated a petition opposing same to no avail. Defendants threatened those supervisors that had informed their employees of defendants unlawful lowering of their scores with disciplinary action.

19. Defendants' unilateral, arbitrary and unlawful lowering of Plaintiff's and Tenet/DMC employee performance rating scores effectively deprived and cheated Plaintiff and Defendants' other employees of their entitlement to a merit increase and or the correct amount of merit increase in their pay owed to them by Defendants. Defendants' actions as described hereinabove constitutes a breach of Defendants' employment contract with said employees.

## UPON INFORMATION AND BELIEF DEFENDANTS TENET'S AND DMC'S UNDERSTAFFING AT CHILDREN'S HOSPITAL OF MICHIGAN HAS A DISPARATE IMPACT ON AFRICAN AMERICAN INFANTS

20. Plaintiff incorporates by reference paragraphs 1 through 22 as if fully restated herein.
21. Defendant Children's Hospital provides the following about its services and target population on its website[2].
22. Defendants Tenet and DMC also treats a high proportion of minority children suffering disproportionately from poverty-related afflictions such as asthma and lead poisoning.

---

[2] https://www.childrensdmc.org/about/fact-sheet

6

23. Upon information and belief Defendants Tenet and DMC has demonstrated a systemic pattern and practice of discrimination against this vulnerable minority population by understaffing, placing nurses in place of doctors, providing inadequate cleaning of patient rooms,
24. Employees that questioned, spoke out, or refused to participate in this blatant, systemic pattern and practice of discrimination toward the hospital's vulnerable minority population were disciplined, forced to resign, terminated, and replaced by staff brought in from outside of Michigan who upon information and belief, would be more likely to carry out the patterns of discrimination since they lacked the sensitivity and compassion for the local community,
25. Plaintiff voiced her disagreement with these policies that resulted in a systemic pattern and practice of discrimination toward Defendant Children's Hospital's vulnerable minority population on several occasions.

## COUNT I
## FAILURE TO ACCOMMODATE AND RETALIATION IN VIOLATION OF THE PDCRA MCL 37.1202 AND SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. 791 ET SEQ. AS TO PLAINTIFF MAZZEO ONLY

26. Plaintiff incorporates by reference paragraphs 1 through 25 as if fully restated herein.
27. At all material times, Plaintiff was employed by Defendants herein.
28. Plaintiff's cancer diagnosis and related chemotherapy treatment constitute a disability, as that term is defined by and within the meaning of the PDCRA, MCL 37.1103(d) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.*
29. At the time of her termination, Plaintiff's cancer diagnosis and related chemotherapy treatment was unrelated to her ability to perform her duties as a Manager of Patient Care Services at Defendant Children's Hospital.
30. Plaintiff was discriminated against, within the meaning of the PDCRA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.*, when Defendants terminated her because of her accommodations and or request for same due to her disability from her cancer diagnosis and related chemotherapy treatment. Defendants knew or should have known that said conduct was proscribed by and violated the PDCRA, MCL 37.1202 (1) (b) and (e) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq.*
31. Plaintiff's accommodations and retaliation based on Plaintiff's accommodations due to her disability from her cancer diagnosis and related chemotherapy treatment were a determining

factor in Defendant's decision to discontinue Plaintiff's shift accommodations and subsequently terminating Plaintiff in violation of PDCRA, MCL 37.1202 (1) (b) and (e) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq*.

32. The actions of Defendants and its agents, representatives, and employees were intentional in their disregard for the rights and sensibilities of Plaintiff.

33. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings past and future and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

## COUNT II

## RETALIATION UNDER ELLIOTT LARSEN CIVIL RIGHTS ACT MCL 37.2202 (1) AND PDCRA MCL (1) (b) and (e) AND SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. 791 ET SEQ. AS TO PLAINTIFF MAZZEO ONLY

34. Plaintiff incorporates by reference paragraphs 1 through 33 as if fully restated herein

35. Defendant DMC, through its agents, employees, or directors, in violation of *ELCRA*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 *et seq*. and PDCRA MCL (1) (b) and (e) retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above.

36. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

37. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT III
## BREACH OF CONTRACT AS TO PLAINTIFF AND PLAINTIFF ON BEHALF OF ALL SIMILARLY SITUATED EMPLOYEES

38. Plaintiff incorporates by reference paragraphs 1 through 37 as if fully restated herein.
39. Defendant, Tenet entered into a contract with Plaintiff and all of their employees in which the details are set out in Defendant's Policy handbook that allowed for employees to receive increases in their salary and merit pay depending on their performance evaluation as rated by the employee's respective supervisors.
40. Plaintiff and 81.5 percent of the employees, employed by Defendant received performance evaluations, that by contract created the obligation to Defendant, Tenet Health Care to issue increases in salary and or merit pay.
41. Defendant through their Human Resources team asked supervisors to lower scores of the performance evaluations of Plaintiff and a number of its other employees so that the scores would be so that Defendant would no longer be contractually obligated to provide Plaintiff and the other 81.5 percent employees with an increase in salary and or merit pay which they were otherwise entitled to.
42. Defendants lowered Plaintiff's and other employee's performance evaluation scores without notifying Plaintiff or the other employees and for no cause related to their actual job performances.
43. Defendant did not give Plaintiff or other entitled employees salary and or merit pay increases as they were obligated to by contract, although Plaintiff and 81.5 percent of the employees for Defendant, received performance evaluations based on their supervisor's evaluation of their actual performances on the job that entitled them to such increases.
44. Defendant's conduct as described in this complaint constitutes a breach of contract between Defendant, Plaintiff and other employees employed by Defendant.
45. Plaintiff and the other employees affected by Defendant's breach have been damaged in the amount that they would have received to date and in the future had the merit and or salary increase been implemented as required by contract. It should be noted that the provisions of the employment contract entitling Plaintiff and other similarly situated employees to said merit increase in pay based on performance rating score is not accessible to Plaintiff but is in Defendants' possession.

## CLASS ACTION ALLEGATIONS AS TO BREACH OF CONTRACT PLAINTIFF AN SIMILARLY SITUATED EMPLOYEES OF DEFENDANTS

46. Plaintiff incorporates by reference paragraphs 1 through 45 as if fully restated herein.

### The Scope of the Class

47. This action is brought on behalf of all employees of Defendants Tenet and DMC adversely affected by the Defendants' unwarranted unilateral and arbitrary lowering of scores on the employees' annual employment evaluations. The same resulted in an unlawful denial of entitlements to a merit increases in their salaries. The applicable period common to all class members are 2019 and continuing to present and beyond because of breach of employment contract.

### The Class Satisfies All Elements of MCR 3.501

48. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at the present time, upon information and belief exceeds 1,500 employees. The class members includes all employees of Defendant DMC adversely affected by Defendant Tenet's unilateral decision to adjust merit scores to affect merit pay, bonuses, and/or salary increases.
49. The Defendant's failure to fulfill their obligation owed to its employees and to not honor the contract they entered into with the class by providing their employees with merit and or salary increases from 2019, and continuing to present and beyond are common questions of fact and law for this class case.
50. The claims of the representative Plaintiff are typical of those of the class as a whole.
51. The claims of the named Plaintiff are reflective of the pattern of Defendants' breach of employment contract during the period of 2019 to present and beyond.
52. Plaintiff is a representative party who will fully and adequately protect the interests of the Class members. Plaintiff has retained counsel who are experienced and competent in both class action and employment litigation. Plaintiff has no interests which are contrary to or in conflict with those of the Class she seeks to represent.
53. The Plaintiff has retained experienced civil rights counsel who is adequate to represent Plaintiff and the class.

## CLASS TREATMENT IS SUPERIOR UNDER MCR 3.501(A)(2):

54. A class action would be superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. There exists generalized evidence that proves many elements on a class wide basis.
55. A class action is superior to other available methods for fair and efficient adjudication of the controversy. Individual members of the class do not have the resources to marshal the kind of statistical proof and cumulative anecdotal evidence that can be adduced by them in a class action.
56. The individual members of the class have no interest in individually prosecuting separate actions but instead have a strong interest in having class representatives prove up the agency-wide practices in a way that no individual class member could.
57. There is value in concentrating the claims in a single forum.
58. In light of the nature of the claims of the class, there is no likelihood that difficulties will be encountered in managing the case as a class action. The class is precisely defined. The claims will involve proof of Defendants unilaterally and unlawfully lowering class members performance rating scores thereby disqualifying said class members of their entitlements to merit increases in their pay/salary.
59. The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudication could establish incompatible standards of conduct for defendant under the laws alleged herein. Further, questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members in that defendant has acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:
    a. The question of law common to all class members is the Defendants' breach of the class members' employment contract entitling class members to a merit increase in pay/salary commensurate with the scores on their annual performance evaluations.
    b. The question of fact common to all class members is whether the Defendants unilaterally and unlawfully lowered the class members' scores on their annual performance evaluations in Breach of the terms of the employment contract between

the Defendants and the Class by implementation of the same policy applicable to all class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. That the Court certify this case as a class action as pleaded, as to the contract claim **only**, appointing the named Plaintiff as class representative as to the contract and his attorneys, Mungo & Mungo At Law, PLLC, as class counsel;

B. That the Court enter judgment for Plaintiff and members of the class against the Defendants on the claims made in the Third Count stated above;

C. That the Court award Plaintiff punitive damages in the amount of $10 million;

D. That the Court enter judgment awarding Plaintiff and the class compensatory damages, in whatever amount above $25,000 they are found to be entitled to, past and future;

E. That the Court award Plaintiff and the class exemplary damages in whatever amount above $25,000 they are found to be entitled to, past and future;

F. That the Court award Plaintiff and the class lost wages and the value of fringe benefits, past and future;

G. That the Court award Plaintiff and the class their noneconomic damages for mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation;

H. That the Court enter an award to Plaintiff of reasonable attorneys' fees and costs incurred in this action and interest;

I. Award Plaintiff Individually under counts I and II Non-Economic Damages for humiliation, embarrassment, mortification loss of professional reputation in the amount of $5,000.000.00.

J.. Award Plaintiff Individually under Counts I and II Economic Damages and reasonable attorneys' fees and costs incurred in this action and interest; and

K. That the Court award such other and further relief as this Court deems just and appropriate.

Date: September 2, 2021                     Respectfully submitted,

                                            Mungo & Mungo at Law, PLLC

                                            */s/ Leonard Mungo*
                                            LEONARD MUNGO (P-43562)
                                            L. BRANDYN MUNGO (P-82758)
                                            Attorney for Plaintiffs
                                            31700 Telegraph Road, Suite. 2500
                                            Bingham Farms, MI 48025
                                            (248) 792-7557 / (248) 792-7303 (fax)
                                            Caseaction@mungoatlaw.com

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

Brande Mazzeo, on behalf of herself and others
Similarly situated,

      Plaintiff

Tenet Healthcare Corporation a foreign for
Profit Corporation, Detroit Medical Center,
Jointly and Severally

      Defendants

Case No: 21-011078-CD
Hon: Muriel D. Hughes

---

Leonard Mungo, Esq. (P43562)
MUNGO & MUNGO AT LAW, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste. 250
Bingham Farms, MI 48205
(248) 792-7557
(248) 792-7303 (FAX)
caseaction@mungoatlaw.com

---

## JURY DEMAND

Plaintiff, BRANDE MAZZEO and others similarly situated, by and through her attorneys,

Mungo & Mungo at Law PLLC, hereby demands a jury trial on all issues.

                                      By: /s/ Leonard Mungo
                                          Mungo & Mungo at Law PLLC
                                          Leonard Mungo (P43562)
                                          31700 Telegraph Road, Ste 250
                                          Bingham Farms, MI  48025
                                          (248) 792-7557- P
                                          (248) 792-7303 - F
                                          caseaction@mungoatlaw.com

Dated: September 2, 2021